LLOYD R. JOHANSEN, APPELLANT, V. FARMERS MUTUAL HAIL INSURANCE ASSOCIATION OF IOWA, APPELLEE.

274 N. W. 393

FILED JUNE 30, 1937. No. 30081.

*Foster & Yates,* for appellant.

*Chambers & Holland, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and BLACKLEDGE, District Judge.

EBERLY, J.

This is an action under the Nebraska workmen's compensation law. It appears that on April 30, 1935, plaintiff first filed a petition before the then compensation commissioner, alleging, in substance, that on August 17, 1931, while in the employ of defendant, the wheel of an automobile passed over plaintiff's right foot which caused injuries which resulted in his total disability, for which recovery was sought.

Chapter 57, Laws 1935, was passed with an emergency

clause, and was approved and became in full force and effect on May 25, 1935. There was a hearing had under the provisions of this law of 1935 before one of the judges of the compensation court, and on March 11, 1936, an order was entered dismissing plaintiff's cause of action. Thereafter a rehearing was granted, and said cause was heard before the compensation court sitting *en banc*. That court thereupon reversed the original decision, and on May 15, 1936, entered an award in favor of plaintiff. Thereafter defendant prosecuted an appeal to the district court for Lancaster county, upon the hearing of which an order was made and entered in that court reversing the order and judgment of the compensation court rendered in favor of plaintiff, and dismissing plaintiff's cause of action. From this order, and the order of the district court overruling his motion for a new trial, plaintiff appeals.

As part of its judgment, the district court stated special findings of fact, as follows:

"1. That the plaintiff, Lloyd R. Johansen, sustained an injury on or about the 17th day of August, 1931, which injury resulted in immediate disability.

"2. That since the said accident the said Lloyd R. Johansen has been continuously disabled."

There is no evidence in the record which, in a substantial manner, controverts these conclusions.

The following is a résumé of the testimony in the record:

On August 17, 1931, at about 3 o'clock p. m. of that day, plaintiff was at the Ideal Garage on the corner of Fourteenth and M streets, in Lincoln, Nebraska. He was talking to his brother, Jack Johansen, who was seated in a parked automobile at that place. The conversation ended and Jack "backed out" his automobile to commence his journey. In so doing the left front wheel of Jack's car passed over plaintiff's right foot. This caused the initial injury from which it is claimed plaintiff's troubles originated. Plaintiff at the time "didn't think" he "was badly hurt;" his foot "was kind of numb;" he

"rubbed it and it felt better." In the evening of that day, when he removed his socks, the injured foot "was quite red; * * * there was a couple of skinned places on my foot." On the following day, it began to swell and was red and hurt him when he walked on it. After that his "foot got worse;" and he went to bed, and "when I got up I developed a condition in my knees." The services of Dr. Beshlein, a chiropodist, were engaged "two or three days after the accident." The foot was then "badly swollen and awfully sore and red." Dr. Beshlein continued his treatment "about ten days or two weeks." Plaintiff then consulted Dr. Bowman, a regular physician and surgeon, who continued to treat him until February, 1932. He then developed ulcers of the eyes which were treated by Dr. Elliott. In the meanwhile during the "last of September," 1931, his knees swelled and this condition was treated by Dr. Bowman until February or March, 1932. He then consulted Dr. Kail, an X-ray specialist, who made X-rays of his right foot. In March, 1932, he employed Dr. Olney, a regular physician. At this time the plaintiff described his condition as follows: "The swelling had never left my foot, and I had bursitis in both my knees. * * * They weren't any better. They got just about so bad and stayed that way."

It may be said that after the employment of Dr. Olney, the following physicians, surgeons, diagnosticians, and specialists, in turn, made examinations of plaintiff's condition, and treated him from time to time, up to the time of the filing of these proceedings, viz.: Dr. Marx, physician and surgeon; Dr. Pratt, member of the faculty of the Medical School, University of Nebraska; Dr. J. E. M. Thomson, orthopedist; Dr. Ward, physician and surgeon; Dr. Fritz Teal, orthopedist; Dr. Rasck, Dr. Reinhard, and Dr. E. W. Rowe, physicians who examined him for the insurance carrier; and last of all he employed Dr. Arthur L. Smith, diagnostician.

As to the information he had received from these various doctors, plaintiff testifies that he first went to

Dr. Arthur L. Smith about April, 1935; that his knees were then swollen, red and painful, and that he walked with a cane. His further evidence is, in part: "Q. Up to the time you went to see Dr. Arthur L. Smith in April, 1935, had any physician or surgeon who had examined you or treated you, or any other physician or surgeon, ever told you that the condition of your knees was the result of the accident and injuries you sustained on August 17, 1931? A. No. Q. And up to the time that you went to Dr. Arthur L. Smith, in April, 1935, did you know yourself that the condition of your knees and your disability was the result of the accident and injuries you sustained on August 17, 1931? A. No. Q. Dr. Smith made an examination of you, did he? A. Yes. Q. What did his examination consist of? A. Physical, X-rays and the usual clinical examination, I guess, that he gives. Q. Did he inform you what the producing cause of your disability at that time was? A. He did. * * * Q. Did you become informed at the time that you were examined by Dr. Smith what the nature and character of your disability in your knees was? A. Yes. * * * Q. You may state whether, or not, you had ever been informed by any physician or surgeon subsequent to your accident and injuries on August 17, 1931, up to the time you went to Dr. Smith, that the disability in your knees and the physical condition of your knees was the result of the accident and injuries you sustained on August 17, 1931, while in the employ of the defendant on appeal in this case? A. No. Q. When was the first time that you were informed that the accident and injuries you sustained on August 17, 1931, was the producing cause of the condition to your knees, and which you are now suffering, and which renders you disabled? A. In April, 1935. * * * Q. Are you able to earn a livelihood for yourself? A. No. Q. Have you been since your accident and injuries? A. No. Q. Now, Mr. Johansen, during all of the time from the date of your accident and injuries on August 17, 1931, up to the time you went to see Dr. Arthur L. Smith,

you had been treated by many physicians, had you not? A. Yes. Q. And you may state whether, or not, during all of that time, you were trying to find out the cause of your condition and a cure therefor? A. I was."

Plaintiff also testified, viz.: "Q. You may state whether, or not, you were a strong, able-bodied man prior to the 17th day of August, 1931? A. I was. Q. Were you able to walk prior to that time? A. Yes. Q. Was there anything physically wrong with you prior to August 17, 1931? A. No. Q. Had you ever been treated by any physicians or surgeons for any disease prior to that time? A. No. Q. Did you have arthritis prior to August 17, 1931? A. No."

Plaintiff further testified, viz.: "Q. You were a well man before August 17, 1931; have you ever had a well day since that time? A. No, sir. Q. Has there ever been a day since this alleged accident when you have not been disabled? A. Disabled in some way, my foot, my knees, or something. Q. And since August 17, 1931, you have always known, have you not, that the injury sustained on that day to your right foot was disabling? A. The accident that I sustained disabled me in the foot, yes. Q. Has there been any time since August 17, 1931, that you have been able to walk without some kind of a support? A. No. Q. Now, at the time this disability worked up into your knees, was this foot still sore? A. Yes, sir. * * * Q. Was there any lapse of time between the injury to your foot and the time the disability started in your knees? A. No, sir."

In this case the record does not establish that notice of injury or claim for compensation was filed within six months with the compensation commissioner, or served upon the employer, as required by section 48-133, Comp. St. 1929; nor was a petition filed within one year after the accident, as required by section 48-138, and under the limitations therein provided all claims for compensation under the last-named section were barred. *Duhrkopf v. Bennett*, 108 Neb. 142, 187 N. W. 813. In the *Duhrkopf*

case, in discussing the statutory provisions above referred to, the doctrine applicable thereto was announced, viz.: "Where a right has been created by statute which did not exist at the common law, the legislature may impose restrictions thereon, and the conditions so imposed qualify and are an integral part of the act and must be fully complied with in the manner therein prescribed." See, also, 2 Schneider, Workmen's Compensation Law (2d ed.) p. 1891.

However, plaintiff seeks to avoid the bar of the statute by the contention that none of the many doctors employed by him, nor any one else, ever informed him that he was suffering from traumatic arthritis, and that he had no knowledge that the accident of August 17, 1931, was connected with his subsequent physical condition, and constituted the causal factor thereof, until he received such information from Dr. Arthur L. Smith in April, 1935.

But Dr. Fritz Teal testifies as a witness for plaintiff, on direct examination, that he first examined the plaintiff on August 28, 1931, and that his diagnosis was that plaintiff was then suffering from acute arthritis of his right foot and ankle. It further appears on cross-examination that Dr. Teal made a report on the physical condition of plaintiff to the Midwest Life Insurance Company on September 14, 1931, and his "diagnosis was arthritis of the right foot, traumatic in origin." It is stipulated in the record that plaintiff made claim under the accident policy with the Midwest Life Insurance Company for disabilities due to the accident of August 17, 1931. It was in connection with this claim that Dr. Teal's diagnosis was made. It also appears stipulated that Dr. Marx, if present, would testify that on or about December 1, 1932, Mr. Johansen, plaintiff, presented himself at the office of Dr. Marx for examination and treatment, on which date Dr. Marx advised him that he was suffering from a proliferating and destructive type of arthritis.

The record also discloses that on April 20, 1932, plaintiff instituted an action against his brother, Jack Johansen,

in the district court for Lancaster county, Nebraska; that, in his petition, signed and personally sworn to by him, filed in that case, he set forth a cause of action for damages for personal injuries received by plaintiff, due to the negligence of Jack Johansen in backing an automobile over the feet of plaintiff on August 17, 1931. The fourth paragraph of this pleading is as follows:

"That on said day and at said time and place the front wheels of said Chevrolet automobile ran onto and over the feet of the plaintiff injuring the bones in his feet causing him great injury and damage; that as the result of the negligence and carelessless of the defendant, the plaintiff was required to remain in bed for a period of four months sustaining constant physical and mental pain and suffering; that plaintiff has been required to employ doctors and surgeons to attend him and to expend money and incur indebtedness for their services in the sum of Five Hundred Dollars ($500) ; that as a proximate result of the negligence and carelessness of the defendant and the injury to the bones in his feet, the plaintiff's lymphatic system and circulatory system has become involved, and his knee joints have been affected and stiffened, and his eyes have been affected so that the plaintiff has been permanently crippled and lamed and incapacitated for physical labor and will remain a cripple for the rest of his natural life."

What men actually do from time to time, wholly unexplained, may be conclusive as to what knowledge they then possess, even as against protests to the contrary subsequently made.

These statements made in his petition are not satisfactorily explained by plaintiff. It is obvious from all the evidence that the disability of plaintiff was immediate, commencing substantially on the date of the accident, and it was thereafter substantially continuous. From and after the 19th day of April, 1932, it would seem undisputable that plaintiff was chargeable with knowledge that as a proximate result of the accident of August 17, 1931, he had been "permanently crippled and lamed and incapacitated

for physical labor and will remain a cripple for the rest of his natural life."

If it be conceded that plaintiff was ignorant as to the name of the disease from which he suffered, the causal injury, so far as objective symptoms were concerned, was not latent, and it must be admitted that this public record in evidence discloses that he was informed and well knew on April 19, 1932, of the causal connection between the accident of August 17, 1931, and his then condition, more than three years prior to the commencement of the present action, and that he had a compensable injury during all that period of time. *Park v. School District,* 127 Neb. 767, 257 N. W. 219; *Welton v. Swift & Co.,* 125 Neb. 455, 250 N. W. 661.

Therefore, plaintiff's proof is manifestly insufficient to remove the bar of the statute of limitations. This fact necessarily determines the litigation and denies plaintiff any relief in this action. The discussion of the further questions presented by the record is therefore unnecessary and would serve no purpose.

It is apparent that the judgment of the trial court is correct, and it is

AFFIRMED.