GEORGE SKOCHDÓPOLE, APPELLANT, v. STATE OF NEBRASKA, DEPARTMENT OF ROADS AND IRRIGATION, APPELLEE.

275 N. W. 665

FILED OCTOBER 29, 1937. No. 30171.

*Chambers & Holland* and *Roland A. Locke,* for appellant.

*Richard C. Hunter, Attorney General,* and *Bert L. Over-cash, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and CHAPPELL, District Judge.

PAINE, J.

This is an appeal from a judgment of the district court dismissing a claim under the workmen's compensation act.

Plaintiff filed a petition before the workmen's compensation court, alleging injury to his hands and arms, which entitled him to an award under the laws of Nebraska. To this the state of Nebraska filed an answer, asking that relief be denied. A hearing was had at Falls City, Nebraska, before Charles E. Jackman, a judge of the Nebraska workmen's compensation court, on May 15, 1936, and on August 3, 1936, an order of dismissal was entered, finding that the disability of the plaintiff was not the result of an accident arising out of and in the course of his employment. On August 5, 1936, plaintiff filed a waiver of rehearing before the full compensation court, and gave notice of his election to appeal to the district court for Richardson county, Nebraska. Pleadings were duly filed and trial was had upon the issues joined on April 30, 1937, and on May 4, 1937, the district judge entered a judgment dismissing the plaintiff's petition for the reason that he found the disability of the plaintiff was not the result of an accident arising out of and in the course of his employment.

The evidence in this case discloses that the plaintiff went to work for the state highway department under Walter Meier in August, 1933, at 40 cents an hour, and was transferred to Falls City, Nebraska, a month later, where he was engaged in putting in guard-rails on state

highway No. 73. On this job it was necessary to dig into frozen ground, and the men were furnished frost-bars. This soil was frozen so hard that it was necessary to devise a particular form of frost-bars to make the holes, and this plaintiff and other workmen bruised their hands from using the frost-bars, and got water-blisters the first day, and later blood-blisters during the course of this work. The foreman got them some cold cream to put on their hands at night, and they bathed them in water, and the result was that during the time that plaintiff was at Falls City his hands became badly inflamed.

Plaintiff's hands remained in a sore condition, and he was transferred to Broken Bow and other towns as a rod man, and from that time to this, plaintiff testifies, his hands were sore; although they have calloused over and healed, they are still in a bad condition. Plaintiff was then transferred into the blue-print department in the state house at Lincoln, and in January, 1936, there was work out on North Tenth street, and the plaintiff accepted a job out there, as it would pay him more money, and again it was cold and they had to use frost-bars, and as soon as he picked up a frost-bar, plaintiff testifies, "I got a shock that I had never felt before; I had severe pains in my hands, and from then on I never used a frost-bar."

He went to Mr. Lobdell, who sent him to Mr. Culwell, who attends to compensation cases for the highway department. The plaintiff then consulted Dr. John C. Thompson, who said that he was suffering from a contracture which had developed, and he then brought an action for compensation. He was thereafter referred to Dr. Czar Johnson by the attorney general's office for a careful examination. Dr. Johnson testified that he had Dupuytren's contracture. Dr. Thompson's testimony was definitely that plaintiff had an infected condition of his hand.

From this statement of the evidence, it appears that the sole question in this case is whether the plaintiff sustained a compensable injury. Dr. Thompson testifies that there is no question but what a continued low-grade infection set

in from the time of his first injury, in 1933, and continues.

The evidence of Dr. Thompson was that he specializes in internal medicine and diagnosis, and is a member of the medical advisory commission, appointed by the governor; that plaintiff came to him for examination on February 17, 1936, and complained of pain in his hands and arms after doing hard work, also numbness in his fingers, especially on the left hand.

Dr. Thompson states that, if the history of the case as given by the plaintiff is correct, an inflammatory condition was started in both hands by the blisters, and that it is progressive, and greater and greater contracture will result.

When asked to give the name of plaintiff's trouble, Dr. Thompson said: "The name has been applied to similar contractures,—the name of the man who first described it was Dupuytren, Dupuytren's contracture. I don't know whether we should use the term for this condition or not. This is a Dupuytren-like contracture."

The state relied upon the testimony of its only witness, Dr. Czar Johnson, who said he was a Fellow of the American College of Surgeons. He said he had had 16 cases of this kind in 30 years of practice. He spent parts of two days in examining the plaintiff. He found he had heart trouble and bad tonsils, and that he had a typical Dupuytren's contracture in both hands, which is a specific disease of unknown origin. Dr. Johnson testified that in some cases there is a history of trauma, but no author will say it is caused by trauma; that it occurs more frequently in bankers, or school teachers, or individuals who have never used their hands for manual gripping; that it also occurs in ministers and housewives.

In the medical text-book, "Accidental Injuries," by Dr. Henry H. Kessler, who has been orthopedic surgeon to several New Jersey hospitals, which text-book was used in the argument by counsel, we find this definition on page 190: "Dupuytren's Contracture:—This condition is due to

a slow but progressive contraction of the palmar fascia, involving chiefly the last two fingers, and ultimately rendering them useless. Trauma plays no part either in initiating or aggravating the condition. The work of Koch and Kanavel, in the treatment of this condition by free full thickness skin grafts, is worthy of consideration."

Our court has said: "Awards for compensation cannot be based upon possibilities or probabilities, but must be based on sufficient evidence showing that the claimant has incurred a disability arising out of and in the course of his employment." *Bartlett v. Eaton,* 123 Neb. 599, 243 N. W. 772; *Townsend v. Loeffelbein,* 123 Neb. 791, 244 N. W. 418.

And, that the burden of proof is upon the plaintiff to prove by a preponderance of the evidence that personal injury was caused to the employee by an accident arising out of and in the course of his employment. *Mullen v. City of Hastings,* 125 Neb. 172, 249 N. W. 560; *Kuhtnick v. Carey,* 124 Neb. 762, 248 N. W. 89.

The record shows that both the compensation court and the district court, after a full trial, dismissed this action. This court has reached the same conclusion, and believes that the plaintiff failed to prove his case, for, in order to recover in a compensation case, the burden is upon the plaintiff to show with reasonable certainty that his ailment was caused by the injury sustained; and this proof must be made by substantial evidence leading either to the direct conclusion or to a legitimate inference that such is the fact. The judgment of the trial court is

AFFIRMED.