HERMAN EISENHAUER, APPELLANT, V. OTOE COUNTY, APPELLEE.

284 N. W. 332

FILED FEBRUARY 24, 1939. No. 30529.

*Thomas E. Dunbar,* for appellant.

*Edwin Moran* and *Vantine A. James, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

This is an appeal from an order of the district court vacating and setting aside an award for compensation made by Judge Jackman of the Nebraska workmen's compensation court.

The evidence discloses that Herman Eisenhauer had been employed since April, 1925, as a road patrolman by Otoe county. His work was in the southern part of the county, in and around the town of Burr, Nebraska. His duties were to drag and blade the roads. He had to work on these roads in all kinds of weather. In the summer time it was hot, and he had to keep the gravel roads of the county in condition, and in the winter time one of his jobs was to remove the snow from the highways.

On January 25, 1936, he was directed by telephone by Ed Wallen, county commissioner, to go and clear the roads of snow on a day when there was a severe blizzard on and all the roads were blocked. About the only person daring to venture out on this county road that day, according to the evidence, was one rural mail carrier, for there was a high wind, and it was 15 degrees below zero.

The equipment which Eisenhauer was using on the day of the alleged accident was a large Caterpillar tractor,

drawing a plow with which the snow was removed from the road. This equipment had no cab, or any kind of protection from the weather, and both of the men were entirely exposed to the elements, being high from the ground. They went from Burr east, and in coming back west they faced the wind, and the evidence disclosed that when Eisenhauer got home his hands were in a serious condition. They were blue and contracted, and he said he could hardly hold the levers, and he put his hands in snow, and then snow water, and suffered great pain that night from his hands.

On May 10, 1937, the said Judge Jackman held a hearing at Nebraska City, taking evidence in said case, and on December 1, 1937, entered an award, finding that Herman Eisenhauer suffered an accident on January 25, 1936, while plowing snow on a county road east of Burr, in that "plaintiff froze his hands, right cheek and nose; that as a result of said accidental injuries, plaintiff developed a latent disability on or about the 23d day of June, 1936, known as enlargement of phalanges, contracture of hand tissues, tendon spaces and sheaths to a terminal inability to flex the phalanges or palm of hands; that said latent disability was caused and is attributable to said accidental injuries which occurred to the plaintiff on the 25th day of January, 1936; that the nature and extent of said latent disability were such as to entitle plaintiff to compensation, hospital, medical and surgical care under the provisions of the Nebraska workmen's compensation law."

On December 11, 1937, the defendant, the county of Otoe, filed in the district court a certificate of waiver and election, to the effect that the county had elected to appeal directly to the district court for Otoe county from the award of Judge Charles E. Jackman, one of the judges of the Nebraska workmen's compensation court, which certificate was signed at Lincoln, Nebraska, December 11, 1937, by the Nebraska workmen's compensation court, Frank M. Coffey, presiding judge, and on the same day, December 11, 1937, the county of Otoe filed its petition on appeal in the district court for Otoe county, setting out the allegations of

the plaintiff as to the accident and damages, a brief summary of the answer filed by the county, a recitation of the hearing before Charles E. Jackman, one of the judges of the compensation court, then setting out ten grounds on which the award was erroneous and contrary to the evidence and the law, and praying that the award be set aside and the plaintiff's petition dismissed, and attaching thereto exhibit A, a copy of the petition filed by Herman Eisenhauer in the compensation court, exhibit B, a copy of the answer filed by the county of Otoe, and exhibit C, a full and complete copy of the award.

On December 16, 1937, Herman Eisenhauer filed his special appearance, objecting to the jurisdiction of the district court for Otoe county on the ground that, under the laws of the state of Nebraska, the Nebraska workmen's compensation court has exclusive jurisdiction of said cause, and that the purported appeal of the county deprived the plaintiff of a hearing before the Nebraska workmen's compensation court. It is further alleged in said special appearance that, although the plaintiff had elected to abide by the award of Judge Jackman, one of the judges of said court, and had requested no rehearing, the purported waiver and appeal by Otoe county to the district court attempts to deny the plaintiff a full and complete hearing before the Nebraska workmen's compensation court, which violates the express terms of the Nebraska workmen's compensation act and the amendments thereto, for the reason that the only appeal to the district court in compensation cases is from an award or judgment entered by the Nebraska workmen's compensation court upon a rehearing from the award of a single judge thereon. On February 28, 1938, the said special appearance of the plaintiff was overruled, and he was given ten days to plead.

Section 48-174, Comp. St. Supp. 1937, was enacted by chapter 57, Laws 1935, to create a Nebraska workmen's compensation court of three judges, and in section 13 thereof it provides that, when the answer is filed, one of the judges of said court shall hear the cause and make findings,

awards, or judgment, the same to be signed only by the judge before whom such proceedings were had, which findings are conclusive upon all parties until reversed or modified upon appeal. It further provides in subdivision 5 of section 13 that either party may, within 14 days from the award of the judge, file an application for rehearing, which rehearing shall be held in Lancaster county, or in another county, at the discretion of the court, but that the employer or the injured employee may waive rehearing before the compensation court and appeal directly to the district court of the county in which the accident occurred. It is further provided that, upon written stipulation of the parties, the matter may be submitted to the district court to be tried as a case in equity, and that appeals to the district court shall be perfected in the same manner as provided for appeals to the compensation court, which is by an application for a rehearing.

It appears that in some of the late cases brought to this court the appeal was first to the compensation court sitting en banc, as in *Johansen v. Farmers Mutual Hail Ins. Ass'n,* 133 Neb. 118, 274 N. W. 393, and in *Svoboda v. Mandler,* 133 Neb. 433, 275 N. W. 599, a hearing was first had before the deputy labor commissioner at Omaha, and then before Judge Welch, and then an appeal was taken to the three members of the compensation court.

In other cases, such as *Skochdopole v. State,* 133 Neb. 440, 275 N. W. 665, *Pillard v. Lincoln Packing Co.,* 133 Neb. 898, 277 N. W. 587, *Sheets v. Glenwood Telephone Co., ante,* p. 56, 280 N. W. 238, *Wilson v. Brown-McDonald Co.,* 134 Neb. 211, 278 N. W. 254, *Ludwickson v. Central States Electric Co., ante,* p. 371, 281 N. W. 603, *Shamp v. Landy Clark Co.,* 134 Neb. 73, 277 N. W. 802, and *Westcoatt v. Lilley,* 134 Neb. 376, 278 N. W. 854, the transcripts show that the appeal was direct to the district court from a hearing before one judge, upon a waiver of a rehearing before the full compensation court.

In *City of Lincoln v. Nebraska Workmen's Compensation Court,* 133 Neb. 225, 274 N. W. 576, the employee filed in

writing his refusal to accept the award, and applied for a rehearing before the full compensation court, which appli-cation was granted. A few days later the city of Lincoln filed a waiver of rehearing and notice of appeal, as set out in said opinion, and thereafter an action in the nature of prohibition was instituted by the city of Lincoln as an original action in the district court for Lancaster county, and it was held that such employee was entitled to have his cause determined finally at his election by the Nebraska compensation court.

However, in the case at bar, the employee, Eisenhauer, is satisfied with the award made by Judge Jackman, and elects to accept said award. The county of Otoe desires to appeal from said award, and files a certificate and waiver of a hearing before the full compensation court, and appeals directly to the district court, which the county has a right to do, and the order of the district judge, overruling the special appearance, was proper, and not in conflict with our opinion in *City of Lincoln v. Nebraska Workmen's Compensation Court,* 133 Neb. 225, 274 N. W. 576. When one party accepts an award in his favor by a single judge of the compensation court, he cannot prevent the defeated party from electing to waive a hearing before the Nebraska compensation court sitting en banc, and appeal directly to the district court.

We will now proceed to examine the evidence in the case, as the plaintiff relies for reversal on the assignment of error that the judgment of the trial court is not sustained by the evidence. The county of Otoe admits that Eisenhauer was working on a very cold day, but absolutely denies that he ever had his hands frozen; admits that he testified that his cheek and nose were frozen. It is not disputed that the employee worked the next day as usual on the tractor, but he said that he wore heavier mittens, and that his hands were cold all the time. He continued to work at the same work for at least another month. When summer came he said his hands swelled some, and on June 23 he first went to see Dr. Thorough about his hands, who testified that he

found swelling, redness, tenderness, and the fingers were rather rigid.

In the bill of exceptions two doctors testified as experts in the case. Dr. Ramacciotti was called by the plaintiff, and testified that he had been practicing in Nebraska City for about six years; that he examined the plaintiff, who gave him a history of having frozen his hands some two years previously. He took no X-rays, but put him through several tests, and discussed the matter with Dr. Thorough. Dr. Ramacciotti testified that he felt that the condition of plaintiff's hands was from the freezing, but admitted that he had arthritis in his hands.

The medical expert for the county was Dr. Thomas Weekes, who testified that he had been practicing 18 years; graduated from Northwestern University, and had taken postgraduate work at Mayo's and several other places; that he had in his practice attended probably a hundred cases of freezing and four or five hundred cases of arthritis. He first made an examination of the plaintiff on May 14, 1937, and took X-rays of his hands and back. He testified that the plaintiff had given him a history of pain in the shoulders and back for years; that he had two or three attacks of lumbago; that he had had arthritis; that his tonsils were badly infected. He testified positively that, if plaintiff's hands had been frozen, he would have been unable to go to work the next morning. In response to a question calling for his opinion as to the cause of difficulty of the plaintiff's hands, he stated that their condition was due to arthritis deformans, and that he did not believe that the plaintiff's hands were brought to their condition by freezing. He also testified that if plaintiff's hands had been frozen sufficiently to cause changes in the joints he would have had gangrene in the hands shortly after the freezing, and that the X-rays all show a diseased condition of the joints and bones due to progressive changes caused by arthritis deformans. He testified that he saw no evidence of the plaintiff having frozen his hands, and that the same condition which exists in plaintiff's hands is also shown to

exist in his shoulders, spine, hips, and feet. He further testifies that a freezing, to damage the muscles, would affect the tendons, and cause the surrounding tissues to adhere to the tendons, which condition was entirely lacking here.

Dr. Weekes also stated that tissue would be white when it was frozen, and then turn red, or perhaps purple, and if there was a third degree freezing it would slough off. He testified that the hands could not have been frozen if they were blue when he got in from work, when the family first saw him.

The evidence shows that plaintiff made no complaint that his hands were frozen until nearly five months afterward, when on June 23, 1936, Dr. Thorough diagnosed the case and told him his hands looked like they had been frozen, and while Dr. Thorough had treated plaintiff for other ailments back to 1934, he had never made any complaint about his hands.

In this case the burden of proof was upon the plaintiff to prove that he froze his hands on January 25, 1936, as alleged, and, further, that such freezing caused the injury to his hands of which he now complains.

It was the decision of the trial court that he had failed to make out his case, and after a careful examination of the record, we believe the decision of the trial court was right, and it is hereby

AFFIRMED.